IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNION ELECTRIC COMPANY<br>d/b/a AMEREN UE, | ) | |
| | ) | |
| | ) | |
|     Plaintiff, | ) | Case No: 4:10-cv-01153 |
| | ) | |
| vs. | ) | |
| | ) | |
| ENERGY INSURANCE MUTUAL<br>LIMITED, | ) | |
| | ) | |
| | ) | |
|     Defendant. | ) | |

**DEFENDANT EIM'S SUPPLEMENTAL REPLY MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
<u>DISMISS AND IN COMPLIANCE WITH THE COURT'S ORDER</u>**

**Argument**

**POINT I**

**THE ARBITRATION CLAUSE IS ENFORCEABLE**
**BECAUSE AMEREN IS NOT ENTITLED TO "CONSUMER" PROTECTION**

UEC argues that, because the limitation on the enforcement of arbitration clauses is set

forth in a statute, it means that the limitation implicates public policy.  The argument proves too

much.  It cannot be that every provision in the Revised Missouri Statutes qualifies as the public

policy of the State.  For example §509.260 RSMo provides that an Answer is due 30 days after a

Complaint is filed.  Surely that cannot be considered a matter of pubic policy of the State of

Missouri.  Likewise, in the insurance realm, § 375.052 RSMo provides: "An insurer or insurance

producer may charge additional incidental fees for premium installments, late payments, policy

reinstatements, or other similar services specifically provided for by law or regulation."  But

nobody can seriously claim that there is some public policy in the right of an insurance company

to charge incidental fees.  That does not involve fundamental state objectives regarding the

health and well-being of the community such that it should be considered public policy.

As EIM explained in its Supplemental Brief, it is reasonable to interpret Section 435.350

as a statute enacted to protect consumers.  Indeed, in *Sturgeon*, the case relied on most heavily by

UEC, the court stated that the purpose of Section 435.350 was "the protection of the consumer."

*Sturgeon v. Allied Prof'ls Ins. Co.*, 344 S.W.3d 205, 217 (Mo. Ct. App. 2011) (emphasis added).

The second case relied on most heavily by UEC was likewise a case involving a policy issued to

a consumer.  *Standard Security v. West*, 267 F.3d 821 (8th Cir. 2001).  UEC also relies on

Section 187 of the *Restatement 2d of Conflict of Laws,* but comment g to that section provides as

follows:

> On the other hand, a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power. Statutes involving the rights of an <u>individual insured</u> as against an insurance company are an example of this sort (see §§ 192-193) [emphasis added].

This likewise reinforces the importance of the significance of whether an insurance policy has been issued to an individual.

Thus, to the extent that Section 435.350 implicates  public policy, then the public policy embodied in this statute is the protection of something that Ameren plainly is not.  Ameren is not an individual consumer.  It is a sophisticated public utility company that participated in creating the insurance vehicle about which it now complains.  To accept Ameren's position and afford Ameren the benefit of a consumer protection statute would be to pervert the meaning of "consumer protection"  and any public policy that supports it.

Furthermore, statements UEC makes in its Supplemental Brief are contradicted by the letters that UEC wrote to NEIL.  Thus, for example, UEC states, "Under §435.350 and 20 CSR 500-1.600, an insured cannot waive Missouri's prohibition of mandatory arbitration clauses by agreeing to an insurance contract that includes such a provision."  (Docket #45, p. 10.)  However, to the best of EIM's knowledge, UEC repeatedly wrote letters to NEIL in which it stated that the dispute resolution (arbitration) provision in the NEIL policy is binding and enforceable under Missouri law, which demonstrates that UEC in fact admits that, as between sophisticated parties, an insured <u>can</u> indeed waive the protection provided under Section 435.350.

As another example, UEC states: "EIM has long known – and in any event is charged with the knowledge – that the arbitration clauses in its insurance policies are against the public policy of several states. These clauses have been void in Missouri for over thirty years."  (Docket

#45, p. 15.)  To the contrary, EIM has long known that UEC regularly signed Renewal

Applications with EIM in which it warranted and represented that it had "reviewed the

mandatory Choice of Law and Arbitration provisions contained in the current policy and agrees

to be bound by such mandatory provisions should a policy be issued."  Since it was reasonable

for EIM to assume that that UEC would not repeatedly make misrepresentations, EIM had every

reason to believe that UEC shared EIM's view that arbitration clause in the EIM Policy was not

void as against public policy.

     EIM also knew  that UEC regularly wrote letters to NEIL in which it stated that the

arbitration clause in the NEIL policy was binding and enforceable -- a statement that UEC could

not make if an arbitration clause in an insurance policy between a multi-billion dollar utility and

the mutual insurance company that insured the utility industry was a violation of public policy.

Thus, rather than "knowing" that the arbitration clause in the EIM Policy has been void in

Missouri for over 30 years, EIM had every reason to believe that UEC shared EIM's opinion that

such clauses are enforceable in policies between sophisticated parties.

## Point II

### UEC'S ARGUMENT CONFIRMS THAT THIS CASE SHOULD BE DISMISSED IN THE EVENT THAT THE COURT DETERMINES THAT THE ARBITRATION CLAUSE IS UNENFORCEABLE

     Despite devoting numerous pages to the subject, UEC essentially makes a single public

policy argument.  It argues that Missouri public policy forbids the enforcement of the

arbitration clause in the EIM Policy and that this public policy would be contravened in the

event the case is dismissed because the court in New York would likely enforce the arbitration

clause.  UEC articulates this argument on page 12 of its Supplemental Brief (Docket #45):

> [I]f this case is dismissed and then litigated in the Southern District of
> New York pursuant to the forum selection clause in the EIM policy, it is
> likely that New York rather than Missouri law will be applied by the
> district court. Under New York law, the arbitration clause will be
> enforceable. Therefore, granting EIM's motion to dismiss this case
> pursuant to the forum selection clause will vitiate the public policy of
> Missouri against mandatory arbitration of disputes involving insurance
> contracts.

UEC makes the same point in the Conclusion part of its Supplemental Brief (Docket #45, p.

15), stating: "Missouri has made it abundantly clear that it has a strong public policy against

mandatory arbitration of insurance disputes. It is equally clear that dismissal of this action will

likely result in mandatory arbitration of this dispute in violation of that public policy.

Therefore, EIM's motion to dismiss for improper venue should be denied."

Accordingly, the only public policy issue in this case concerns whether the court in

New York will enforce the arbitration clause.  However, as EIM indicated in its Supplemental

Memorandum of Points and Authorities in Support of Its Motion to Dismiss and in Compliance

with the Court's Order (Docket # 44), that issue is moot.  The two sides have briefed the issue

of the enforceability of the arbitration clause in the EIM Policy.  If this Court holds that it is

enforceable, then the parties should be sent to arbitration and the case will never reach the court

in New York.

The other possibility would be a holding by this Court that the arbitration clause is

unenforceable.  EIM has indicated previously -- and repeats here with absolute certainty -- that,

in such eventuality, it stipulates that it would no longer seek to enforce the arbitration clause.

Thus, under this scenario, there would be no possibility that the court in New York would

enforce the arbitration clause, thereby mooting UEC's sole argument about the possibility of a

back-door effort to defeat Missouri public policy.

In UEC's own words, "the fundamental protections afforded by Missouri law" are "a judicial forum and a jury trial for disputes involving insurance coverage."  (Docket #45, p. 6) But UEC's rights are not the only rights at issue here.  UEC will not lose its fundamental rights if this case is dismissed and then brought in New York -- it will have its insurance dispute resolved in a judicial forum, as it claims it has the right to.  Moreover, UEC is not the only party with rights.  As this Court previously explained, "there is a 'strong countervailing public policy in favor of holding parties to their agreement' in order to promote commerce."  Docket #27, p. 8 citing *Servewell Plumbing, LLC v. Federal Ins. Co.*, 439 F. 3d 786, 791 (8th Cir. 2006).  In contrast to UEC's rights -- which will be protected if the case is dismissed -- if this case is not dismissed, EIM would most certainly be denied its fundamental right to have its contractual exclusive choice of forum clause enforced in accordance with its terms.

## Conclusion

EIM and UEC agreed in an unambiguous dispute resolution provision that there were only two possible forums for binding resolution of their disputes: arbitration in New York or litigation in New York.  If this Court determines that the arbitration clause is enforceable, the lawsuit should be dismissed and the parties compelled to arbitrate.  Should the Court determine that the arbitration clause is unenforceable, EIM respectfully requests that the lawsuit be dismissed based on the exclusive forum selection clause (since the public policy issue raised by the Eighth Circuit and by UEC would be mooted by this Court's decision that the arbitration clause is unenforceable and EIM's concomitant stipulation not to seek arbitration).

Respectfully submitted,

GOLDSTEIN and PRICE, L.C.
and Alan K. Goldstein, #3239

By: /s/ Alan K. Goldstein
One Memorial Drive, Suite 1000
St. Louis, MO 63102
Tel: (314) 516-1700
Fax: (314) 524-2832

BAKER & McKENZIE LLP
and Michael A. Pollard
and Lisa S. Brogan
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Tel: (312) 861-3070
Fax: (312) 861-2899

Of counsel:

BAKER & McKENZIE LLP
and David Zaslowsky
1114 Avenue of the Americas
New York, NY  10036
Tel:  (212) 891-3518
Fax: (212) 310-1718

ATTORNEYS FOR DEFENDANT
ENERGY INSURANCE MUTUAL
LIMITED

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Defendant EIM's Supplemental Reply Memorandum of Points and Authorities in Support of Its Motion to Dismiss and in Compliance with the Court's Order was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following, this 11th day of February, 2013 to the following:

Robert T. Haar
Susan E. Bindler
Lisa A. Pake
Alison Esbeck
Haar & Woods, LLP
1010 Market Street, Suite 1620
St. Louis, MO 63101
Attorneys for Plaintiff Union Electric Company, Inc.


/s/ Alan K. Goldstein

`